**In re Jerry Enos ROGERS and Lila Rogers, his wife, Debtors.**

**James B. McCRACKEN, Trustee, Plaintiff,**

v.

**Jerry Enos ROGERS, Lila Rogers, his wife, Ralph Rizzuto Jr., and Marsha Rizzuto, his wife, Defendants.**

**Bankruptcy Nos. 80–00551–BKC–JAG, 80–01524–BKC–JAG.**
**Adv. No. 81–0432–BKC–JAG–A.**

**United States Bankruptcy Court, S. D. Florida.**

**Feb. 5, 1982.**

---

Richard W. Smith, Johnson & Smith, Fort Lauderdale, Fla., for debtors-defendants.

Reggie David Sanger, Fort Lauderdale, Fla., for trustee.

James B. McCracken, Fort Lauderdale, Fla., trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, District Judge.

This adversary case was tried before the court on November 2, 1981 upon the complaint of the plaintiff-trustee seeking declaratory relief, revocation of discharge and turnover, and on the answer of the defendants generally denying the crucial allegations of the complaint. Prior to the trial, the court entered a temporary injunction and restraining order enjoining and restraining Jerry Enos Rogers and Lila Rogers from collecting any rentals on the mobile homes which constitute the assets over which this litigation has been conducted (C.P. No. 9).

Lila Rogers is a chapter 7 debtor in this court through her filing of Case No. 80–00551–BKC–SMW. Jerry Enos Rogers is a chapter 7 debtor in this court through his filing of Case No. 80–01524–BKC–JAG. Those two cases were consolidated and the plaintiff, James B. McCracken, was appointed trustee in both cases.

The defendants Ralph Rizzuto Jr. and Marsha Rizzuto, his wife, occupied one of the mobile homes. The Rizzutos filed no pleadings in this case and were not represented by counsel. However, Marsha Rizzuto appeared at the trial and testified in the case.

This litigation was over transactions involving two mobile homes. One of the mobile homes was owned by Lila Rogers and a former husband. Apparently, no disposition was made of the title of that mobile home when Lila divorced her former husband. Therefore, she owned an undivided one-half interest in the mobile home upon her divorce. Lila's position is that she transferred her undivided one-half interest in that mobile home to her father, Sidney Horn, for valuable and realistic consideration prior to the filing of her chapter 7 case

and therefore did not schedule it as her asset in that proceeding.

The other mobile home had been owned by Jerry Rogers and in his chapter 7 case, he scheduled it as being his property. The title certificate (Plaintiff's Exhibit No. 4) indicates Jerry and Lila held title to that mobile home as tenants in common. Both debtors are before the court as defendants in this adversary and both are subject to the jurisdiction of this court and bound by disposition of the issues herein by the court. It is this latter mobile home which has been occupied by the defendant Rizzutos, either as tenants or purchasers, under an agreement between them and the Rogerses.

◼ The issues regarding the trailer owned by Lila and her former husband are the easier of resolution. The trustee takes the position that since there were no documents transferring Lila's one-half interest to her father, Sidney Horn, no transfer did take place, and that asset is part, or should be part, of the Lila Rogers bankruptcy estate. The unrebutted evidence shows that Sidney Horn paid Lila $2,000 for her one-half interest in that mobile home on March 8, 1980 some two months prior to Lila's filing her chapter 7 case. That money was deposited in the joint account of Jerry and Lila (Defendants' Composite Exhibit B). Further, Sidney Horn, as landlord, leased that mobile home to Sharon Heilman and Mark McCoy prior to Lila filing her bankruptcy petition (Defendants' Exhibit C).

There was an encumbrance on this mobile home and, of course, Sidney Horn took Lila's interest subject to that encumbrance. The fact that no paper transfer of title was ever made was by reason of the naivete of the parties as will be fully discussed below. Jerry Rogers testified that he received authorization from Sidney Horn to collect the rent on that mobile home from his tenants (Defendants' Exhibit A). The Rogerses did collect the rents, and make the mortgage payments and either remitted to or held the small difference on behalf of Sidney Horn.

Therefore, as to the mobile home, the one-half interest which the trustee asserts belongs to Lila Rogers' bankrupt-estate, the court finds that that asset was not part of the estate. The $2,000 consideration paid by Sidney Horn was, in fact, paid and there is no evidence to countervail the testimony of Lila Rogers that the said $2,000 represents full value for her equity interest in that asset at the time it was transferred.

◼ The transaction between the Rogerses and the Rizzutos regarding the other mobile home is more complex, rendered so primarily by reason of the unbusinesslike manner in which the parties handled the transaction. The Rizzutos and the Rogerses impressed the court as being extremely naive and inexperienced in handling the most simple personal business matters. The manner in which this transaction was handled and the attitude of Jerry Rogers toward the Rizzutos, the trustee and the trustee's attorney, understandably gave the trustee and his attorney much concern and made them extremely suspicious of all of the circumstances surrounding this transaction. The trustee and his attorney are to be commended for pursuing the interests of the estate in the mobile homes and the proceeds from the use or sale thereof and the fact that the court concludes that neither of these assets belonged to either of the debtors at the time their petitions were filed in this court in no way reflects on the sincerity of the trustee or his attorney in bringing this action.

In July, 1978, the Rizzutos commenced occupying the jointly titled trailer under a very inartfully drawn "option to purchase". One copy of the option has been admitted into evidence as Plaintiff's Exhibit No. 8 and another copy has been admitted into evidence as Plaintiff's Exhibit No. 11.

It is undisputed that the Rizzutos commenced occupancy in July of 1978 and made payments pursuant to that occupancy thereafter. There is a dispute as to whether the option to purchase was exercised immediately upon the execution of the option itself or not until December, 1980. Marsha Rizzuto testified unequivocally that the option was exercised in July of 1978. Lila Rogers was equally unequivocal in testifying that it

was not exercised until December, 1980. Jerry Rogers dated his acknowledgment of exercise of the option December 13, 1980. However, a number of the receipts for payment are in evidence (Plaintiff's Composite Exhibit No. 10). Several of those receipts were written by Lila Rogers and referred to the payment as a mortgage payment including one dated July 28, 1978. Therefore, the court concludes that the parties had fully understood and intended that the option to purchase had been exercised by the Rizzutos in July, 1978 and more than three years prior to the trial of this adversary case. Therefore, the trustee could acquire only the mortgagees' interest in the mortgage resulting from the purchase by the Rizzutos from the Rogerses. That mortgage matured by its terms in July, 1981.

■ The trustee seeks revocation of the discharge of the debtors, Jerry Enos Rogers and Lila Rogers, in this proceeding. The court finds that the conduct of Jerry Rogers in bringing a landlord-tenant action against the Rizzutos and in attempting to collect payments from the Rizzutos, notwithstanding the appointment of the plaintiff as trustee, in the bankruptcy cases to be reprehensible and not to be condoned. Were Jerry Rogers a more intelligent and sophisticated person, the court would be inclined to deal harshly with him. However, the revocation of discharge and denial of discharge to a debtor such as Jerry Rogers, is too harsh a remedy when the court does not find the degree of wrongful intent on the part of the debtors to justify such a result.

Prior to the entry of the temporary injunction and restraining order, the Rogerses had improperly collected $897 in payments from the Rizzutos. This sum of money must immediately be paid to the trustee. If it is not, the court will reconsider the trustee's request that discharge be revoked.

In accordance with Bankruptcy Rule 921(a), a separate Judgment incorporating these Findings and Conclusions is being entered this date.